**[Dkt. No. 88]**

```
           UNITED STATES DISTRICT COURT
              DISTRICT OF NEW JERSEY
```

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | Crim. No. 10-434 (RMB) |
| v. | : | |
| | : | |
| FREDERICK SELLERS | : | **OPINION** |
| | : | |

On April 6, 2016, this Court sentenced Defendant Frederick Sellers to 188 months, and subsequently reduced the sentence to 151 months. The sentence was the result of a jury's verdict finding Defendant guilty of a conspiracy to distribute five kilograms of cocaine in violation of 21 U.S.C. § 846. Defendant now moves for compassionate release under the First Step Act and 18 U.S.C. § 3582(C)(1)(A). For the following reasons, the Motion is DENIED.

The recently enacted First Step Act allows a defendant to be afforded compassionate release for "extraordinary and compelling reasons." 18 U.S.C. § 3582(C)(1)(A)(i). The statute provides in relevant part:

> (c) Modification of an imposed term of imprisonment. The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant

> after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that
>
>> (i)extraordinary and compelling reasons warrant such a reduction; or [...]

18 U.S.C. § 3582(c) (emphasis added).

Thus, under the First Step Act, a defendant seeking a reduction in his term of imprisonment bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release. 18 U.S.C. § 3582(C)(1)(A).

At the time of filing of his Motion, the requisite thirty days waiting period had not passed. That would have foreclosed this Court's review. United States v. Raia, __F.3d.__, 2020 WL 1647922, at *2 (3d Cir, 2020).[1] As of the time of this Court's Opinion, the thirty days waiting period expired on April 23, 2020, and the Court has not received notice that the Bureau of Prisons acted on Defendant's request. Thus, because the exhaustion period under the statute is no longer a hurdle to

---

[1] The Court need not engage in a discussion as to whether exhaustion requirement is jurisdictional.

2

this Court's decision, the Court turns to the Defendant's essential argument that the COVID-19 pandemic that is facing this country presents an "extraordinary and compelling reason" for his release.

Defendant is currently housed at the Metropolitan Detention Center, a 1,700 inmate facility in Brooklyn, New York ("MDC"). As of the time of the filing of the Motion, MDC had confirmed 9 positive COVID-19 inmates and 14 positive COVID-19 staff members. Defendant believes his entire unit has been exposed together and is being medically quarantined together. He contends that his diabetes "makes him especially vulnerable" to severe illness should he contract COVID-19. Defendant further argues that the MDC generally lacks an adequate medical infrastructure and supplies to address the spread and treatment of the prisoners with the COVID-19 virus. After the filing of the Motion, Defendant informed his counsel that his cellmate was displaying apparently worsening COVID-19 symptoms. See Dkt. No. 91. The Court notes that this was brought to the attention of the institution's nurse who addressed it. See id.[2]

---

[2] Defendant criticizes the nurse's response to Defendant's cellmate as "disturbing" and a "callous lack of medical attention to an asthmatic BOP inmate with COVID-19." There is no support that the inmate was COVID-19 positive. Nor is there any point in disparaging a medical professional who has just as an incentive to prevent the spread of the deadly virus as does the Defendant.

The Court finds that Defendant has not demonstrated that the Bureau of Prisons is incapable of protecting Defendant's health.  As the Government has introduced, the Bureau of Prisons has procedures in place to protect the prisoners.  <u>See</u> http://www.bop.gov/coronavirus/covid19_status.jsp (last accessed April 15, 2020).  Defendant does not respond to these particular procedures and how they would not help him but simply argues that the "best evidence that the BOP cannot control the spread of coronavirus is that the BOP has not controlled the spread of coronavirus."  <u>See</u> Dkt. No.91, at 10.  Such statement is not helpful.

The Court finds the measures instituted by the BOP to be reasonable to address the virus outbreak.  Defendant informed his counsel that he is in a cell with an inmate he believes to be COVID-19 positive.  And yet by Defendant's own account, a nurse was present to address the inmate's condition.  Moreover, even assuming Defendant was exposed to the virus and is unfortunately COVID-19 positive, Defendant has not addressed how releasing him to others where quarantine is not possible for the transportation to Pennsylvania justifies his release.

Even if the Court were to grant Defendant's Motion, the Court is concerned what that decision may mean in practical terms.  If this Court were to grant Defendant's release, he will be immediately transported to a Pennsylvania correctional

4

institution because there is a detainer lodged against him as a result of a murder in the third degree conviction. Thus, in actuality, Defendant's Motion is not one for release but for a transfer. This scenario adds a whole new layer of risks that the Court is not prepared to take, i.e. additional law enforcement officers, a new inmate population, etc. This additional expanded social contact at this point presents more risks.

    In this Court's final analysis, this Court does not mean to minimize the serious risks that COVID-19 poses in our federal prisons. But the Court finds that based on the Defendant's particular individual situation, the BOP is best positioned at this juncture to determine the proper course of action, balancing the concerns of health and safety, of all involved. The Motion is DENIED.
.

                                  s/Renée Marie Bumb_____
                                  RENÉE MARIE BUMB
                                  United States District Judge

Dated: April 24, 2020